UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY CIRRENCIONE,

Plaintiff,

v.

WESTERN MICHIGAN UNIVERSITY HOMER STRYKER M.D. SCHOOL OF MEDICINE,

Defendant.
_____________________________________/

Case No. 1:26-cv-1263

Hon. Hala Y. Jarbou

**OPINION**

Plaintiff Terry Cirrencione brings this suit against Western Michigan University Homer Stryker M.D. School of Medicine ("WMed"). Cirrencione raises a single claim alleging that WMed's failure to accommodate his disability and its early termination of his medical residency violated the Rehabilitation Act. 29 U.S.C. § 794, *et seq*. Cirrencione's Residency Agreement contained an arbitration clause covering claims relating to discrimination or retaliation. Relying on its contractual right to arbitrate such claims, WMed now moves to compel arbitration and to stay these proceedings. In response, Cirrencione raises three defenses: (1) that WMed waived reliance on the arbitration agreement by its conduct before and during this lawsuit; (2) that the agreement is unenforceable because its 60-day time limit to bring an arbitration demand prevents the effective vindication of his rights under the Rehabilitation Act; and (3) that the Residency Agreement is unenforceable because it is an unconscionable adhesion contract under Michigan law. The Court is not persuaded that WMed waived its arbitration rights through its conduct. It also declines to consider Cirrencione's enforceability arguments because the Residency Agreement clearly states that these threshold questions of arbitrability should be referred to an

arbitrator. Accordingly, the Court will grant WMed's motion to compel arbitration and stay the proceedings.

## I. BACKGROUND

In March 2025 Cirrencione matched to WMed's residency program through the National Resident Matching Program ("NRMP"). (Compl. ¶ 6, ECF No. 1.) A month later, Cirrencione signed the Residency Agreement formally appointing him to a one-year term as a WMed resident in its emergency medicine program. (*See* Mot. to Stay Proceedings & Compel Arbitration 1, ECF No. 8.) The Residency Agreement, which is four pages long, contains a broad mandatory arbitration provision. (*See* Residency Agreement 3–4, ECF No. 8-1.) The provision requires that "[a]ny controversy or claim arising out of this Agreement or termination of this Agreement (including any claim of harassment, discrimination, or retaliation) shall be settled solely by arbitration . . . in accordance with the rules of the American Arbitration Association then pertaining." (*Id.* at 3.) Relevant here, the arbitration provision establishes a shortened limitations period for bringing an arbitration demand:

> The demand for arbitration must be submitted, in writing, to both the other party and the American Arbitration Association . . . . The demand must be received by the American Arbitration Association within sixty (60) days after the alleged violation, misconduct, or incident occurred that gives rise to the request for arbitration. Failure to file the demand with the American Arbitration Association within the sixty (60) day time period shall constitute a full and complete waiver of the claim . . . . If the written demand for arbitration is not filed within the sixty (60) day period, it is forever barred.

(*Id.* at 3–4.)

After matching, Cirrencione told WMed that he was experiencing serious health issues as a consequence of Graves' Disease, a disease that affects the thyroid gland. (Compl. ¶ 7.) These health problems delayed his graduation from medical school from May 2025 to September 2025. (*Id.* ¶ 9.) On October 29, 2025, Cirrencione had his thyroid surgically removed, and subsequently

began a lengthy recovery process. (*Id.* ¶¶ 17–18.) As a result of these medical issues, Cirrencione's start date for his residency was repeatedly pushed back.

Throughout this period, Cirrencione sought medical accommodations from WMed staff prior to onboarding. (*Id.* ¶ 14.) According to the complaint, WMed declined to "engage in the ADA interactive process until [Cirrencione was] officially employed." (*Id.* ¶ 25.) From Cirrencione's perspective, he was at an impasse: to become "officially employed" he had to first attend orientation, but he could not safely attend orientation without first receiving medical accommodations. (*Id.* ¶ 26.)

In January 2026, Cirrencione had not started his residency with WMed and was continuing to seek pre-orientation medical accommodations. (*Id.* ¶¶ 39–40.) On January 12, WMed submitted a waiver request to the NRMP for a release from its Match obligation. (*See* NRMP Waiver Correspondence, ECF No. 8-3, PageID.47.) On February 11, NRMP granted the waiver request. (*Id.*, PageID.50.) Five days later, WMed officially terminated its offer to Cirrencione to join its emergency medicine program. (*See* Termination Letter, ECF No. 8-2, PageID.41–42.)

On February 27, 2026, Cirrencione's counsel notified WMed's counsel that he intended to file suit under the Rehabilitation Act. (*See* Hurwitz Letter, ECF No. 11-2, PageID.84.) On March 2, 2026, WMed's counsel confirmed receipt. (*See* Hurwitz Emails, ECF No. 11-3, PageID.93.) The letter did not mention the arbitration provision or make an arbitration demand. On April 20, 2026, Cirrencione filed suit in this Court raising a single claim under the Rehabilitation Act. (*See* Compl. ¶¶ 46–64.) That same day, WMed's counsel replied to Cirrencione's counsel, explaining the delay in responding on "a variety of spring break vacations." (Hurwitz Emails, PageID.92.) On June 16, 2026, in lieu of filing an answer, WMed filed the present motion to stay proceedings and compel arbitration pursuant to the arbitration clause in the Residency Agreement.

## II. LEGAL STANDARD

The Federal Arbitration Act (FAA) establishes a federal policy of favoring the enforcement of "arbitration agreements on an equal footing with other contracts." *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 2 of the Act directs that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where there is an issue "referable to arbitration" in an ongoing lawsuit, the court must stay litigation on that issue upon motion by one of the parties. 9 U.S.C. § 3. Under § 4 of the Act, parties seeking a stay of litigation may also file a parallel motion to compel arbitration. 9 U.S.C. § 4. Unless clearly provided for by the relevant arbitration agreement, a court, not an arbitrator, decides whether the issues before it are arbitrable. *See AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986). Parties may agree to arbitrate arbitrability via a "delegation provision," which is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 68–69. The party opposing arbitration bears the burden of showing that the contract is unenforceable or does not encompass the claims at issue. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91–92 (2000).

## III. ANALYSIS

The parties do not dispute that the arbitration agreement covers the discrimination claim at the heart of this case. Instead, Cirrencione challenges the enforceability of the arbitration on three separate grounds. He first argues that WMed waived its right to arbitrate when it failed to disclose the existence of an arbitration agreement to Cirrencione until after the Residency Agreement's 60-day time limitation ran out. Second, he contends that the arbitration agreement is unenforceable because its 60-day enforcement provision prevents the effective vindication of his federally

protected rights under the Rehabilitation Act. Lastly, he argues that the Residency Agreement is an unconscionable adhesion contract under the Michigan Supreme Court's recent decision in *Rayford v. Am. House Roseville*, No. 163989, 2025 WL 2177754, at *1 (Mich. July 31, 2025). The Court proceeds with Cirrencione's arguments in the order they were presented.

**A. Waiver**

Cirrencione argues that WMed has waived its right to arbitrate. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). In determining whether a party has waived its right to arbitrate, federal courts "apply 'ordinary waiver rules.'" *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 723 (6th Cir. 2025). Under ordinary waiver rules, a party waives its right to arbitrate when it "takes actions that are completely inconsistent with any reliance on an arbitration agreement." *Schwebke v. United Wholesale Mfg., LLC*, 96 F.4th 971, 974 (6th Cir. 2024). Whether or not delaying actions prejudice the counterparty is no longer an input in the arbitration waiver analysis. *Id.* (citing *Morgan*, 596 U.S. at 417).

The thrust of Cirrencione's argument is that WMed had an obligation to inform him that the clock was running on the Residency Agreement's 60-day time limit to bring an arbitration demand, and that WMed's failure to do so constitutes waiver. Beyond mere silence, Cirrencione alleges that WMed "affirmatively conceal[ed]" (Resp. 7, ECF No. 11) the content of the arbitration agreement when it was on notice that Cirrencione intended to file suit under the Rehabilitation Act and failed to either inform him that the Residency Agreement contained an arbitration agreement with a time limitation provision or immediately invoke its right to arbitrate. (*Id.* at 7–8.)

There are several flaws in this argument. As an initial matter, Cirrencione points to no cases supporting his position that opposing counsel owed a duty to make him or his attorneys aware that the limitations period was running on his arbitrable claim. And the parties' pre-suit

communications reveal no intent on behalf of WMed to waive its right to arbitrate, in no small part because arbitration was not mentioned in Cirrencione's February 27, 2026, letter to WMed. (*See* Hurwitz Letter, PageID.84–88.) Cirrencione argues that counsel's delay and silence should itself be construed as waiver. (Resp. 7.) If anything, the opposite is true. A potential defendant may legitimately rely on conditions precedent, such as the statute of limitations or a contractually negotiated time limitation, to protect its rights even when it knows a potential claim may be pending. In other words, WMed's silence could just as readily (if not more so) indicate reliance on the 60-day limitation clause rather than waiver.

The Court is also not persuaded that Cirrencione had no knowledge of the 60-day time window to bring his arbitration demand. It is evident that Cirrencione had access to the Residency Agreement at the time he signed it. (*See* Certificate of Signature 1, ECF No. 8-1.) And while Cirrencione's access to the Residency Agreement may have ended upon his termination on February 11, 2026, the record indicates he had ample time to view and download it between April 2025 and February 2026. Even if WMed knew that Cirrencione failed to retain a copy of the Residency Agreement, it is far from clear that staying silent in that scenario would be "completely inconsistent" with reliance on the 60-day time limitation. *Schwebke*, 96 F.4th at 974.

Even presuming, as Cirrencione suggests, that WMed's pre-suit silence was "motivated by some perceived tactical advantage," *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015), it is irrelevant to the issue of waiver. In *Gunn*, a pre-*Morgan* case, the defendant employer waited fifteen months before raising its arbitration rights in five separate FLSA cases brought by current and former employees. *Id.* 263. In finding waiver, the Sixth Circuit emphasized both the tardiness of the defendant's assertion of its arbitration right and the prejudicial impact of the defendant's "dilatory tactics" on the plaintiffs. *Id.* 264–65. But this is a post-*Morgan* world;

prejudice no longer factors into the waiver analysis in arbitration. *See Schwebke*, 96 F.4th at 974. Therefore, to the extent that *Gunn*'s waiver discussion remains good law, it is on the grounds that tardy assertions of arbitration rights may be completely inconsistent with reliance.

Here, WMed's assertion cannot be considered tardy. It raised its right to arbitrate at the earliest opportunity in this litigation: in a pre-answer motion less than two months after the filing of the complaint. Defendants "routinely raise the right to arbitration in their answer" as a matter of course. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718–19 (6th Cir. 2012). This practice is common across circuits. *See, e.g.*, *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 923 (D.C. Cir. 2011) (locating the appropriate moment for a defendant to raise an arbitration right at "the first available opportunity, typically in filing his first responsive pleading or motion to dismiss"); *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015–16 (9th Cir. 2023) (finding no waiver where right to arbitrate was raised in both answers and defendant did not participate in litigation on the merits); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1150–51 (5th Cir. 1986) (finding no waiver despite multi-year jurisdictional dispute that occurred before defendant raised arbitration in its answer); *cf. Schwebke*, F.4th at 975 (finding waiver where defendant failed to raise arbitration as an affirmative defense, despite raising others, and waited seven months before moving to compel). WMed's motion to stay proceedings and compel arbitration in lieu of an answer falls well within the time frame necessary to properly invoke a right to arbitrate.

Cirrencione's reliance on *Solo v. United Parcel Service Co.*, 947 F.3d 968 (6th Cir. 2020) is also misplaced. In that case, the defendant sought dismissal of all claims on the merits yet stated in the same motion that it reserved the right to arbitrate those very issues. *Id.* at 975–76. It then waited for two years to invoke its arbitration right. *Id.* at 975. The Sixth Circuit held that this

internally inconsistent position amounted to waiver because UPS sought to "keep its right to demand arbitration in reserve indefinitely while it pursue[d] a decision on the merits before the district court." *Id.* at 976. WMed's conduct could not be more different. It has not filed a motion to dismiss on the merits. It instead invoked its arbitration right at the earliest possible opportunity by filing a motion to compel arbitration and stay proceedings in lieu of an answer. It has avoided taking the fatally inconsistent position of asking this Court to decide the merits of a case while reserving the right to have an arbitrator second-guess its work. Consequently, WMed has properly preserved its rights to arbitrate under the Residency Agreement.

**B. Effective Vindication**

Cirrencione next argues that the 60-day time limit prevents the effective vindication of his federal rights. Under this federal common law doctrine, ostensibly rooted in the FAA's savings clause, "prospective waiver[s] of a party's right to pursue statutory remedies" are invalid as contrary to public policy. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). For instance, the Supreme Court has remarked that "an arbitration agreement forbidding the assertion of certain statutory rights" or imposing costs "so high as to make access to the forum impracticable" would be unenforceable. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013). The Supreme Court, for its part "has yet to apply the doctrine to invalidate an arbitration clause." Myriam Gilles, *The Quiet Revival of the Effective Vindication of Rights Doctrine*, 94 Fordham L. Rev. 2035, 2058 (2026). But neither has it reversed a lower court's decision to invalidate an arbitration agreement on effective vindication grounds since *Italian Colors*. *Id.* The doctrine remains extant in the courts of appeal. For example, the Sixth Circuit recently joined four of its sister circuits in striking down arbitration provisions that prevented the effective vindication of statutory rights under ERISA. *See Parker v. Tenneco, Inc.*, 114 F.4th 786, 793 (6th Cir. 2024). And while it has never applied the effective vindication

doctrine to void a limitations period in an arbitration agreement, in two cases outside of the arbitration context the Sixth Circuit has categorically held "that 'where statutes that create rights and remedies contain their own limitation periods, the limitation period should be treated as a substantive right' which may not be waived." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 520 (6th Cir. 2021) (quoting *Logan v. MG Grand Detroit Casino*, 939 F.3d 824, 839 (6th Cir. 2019)).

Before the Court today is a predicate issue: whether this Court or the arbitrator decides whether the Residency Agreement prevents the effective vindication of Cirrencione's Rehabilitation Act rights. The Supreme Court has drawn a distinction between two categories of arbitration questions. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002). The first category concerns "substantive questions, such as whether parties are bound by an arbitration clause or whether an arbitration clause covers a dispute." *Alliance Health & Life Ins. Co. v. Am. Nat'l Ins. Co.*, 2022 WL 2903440, at *2 (6th Cir. July 22, 2022) (citing *Howsam*, 537 U.S. at 84–85). These questions are presumptively decided by a judge, not an arbitrator. *Id.* On the other hand, "procedural questions of arbitrability"—those questions that "grow out of the dispute and bear on its final disposition"— lie presumptively within the arbitrator's domain. *Id.* (quoting *Howsam*, 537 U.S. at 84). For example, whether a party complied with a time limitations provision is a question of procedural arbitrability. The Sixth Circuit has instructed lower courts to apply the "straightforward rule" that "[a] time limitation provision involves a matter of procedure; it is a 'condition precedent' to arbitration; and it thus is 'presumptively' a matter for an arbitrator to decide." *United Steelworkers of Am. v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 422 (6th Cir. 2007) (en banc) (quoting *Howsam*, 537 U.S. at 85)).

Relying on this precedent, WMed argues that Cirrencione is "missing the point" by focusing on the enforceability of the 60-day limitations period. WMed argues that it is not asking

the court to "make any ruling regarding the timeliness of Cirrencione's claim or the enforceability of the 60-day limitations period." (Reply 6, ECF No 16.) WMed properly notes that the question of whether Cirrencione complied with the 60-day limitation provision is a procedural question of arbitrability presumptively left to the arbitrator. *See UGSO of Am. v. Entergy Nuclear Operations, Inc.*, No. 1:16-cv-337, 2017 WL 1396147, at *3 (W.D. Mich. Jan. 6, 2017). But WMed improperly combines timeliness and enforceability as belonging in the same category of arbitrable question. On the one hand, timeliness—"the application of a time-limitation rule"—lies within the heartland of procedural arbitrability and is therefore brought properly before the arbitrator. *United SteelWorkers*, 505 F.3d at 422. Enforceability, on the other hand, is a matter of substantive arbitrability that this Court presumptively decides. *See Alliance Health* 2022 WL 2903440, at *2. Although both issues—timeliness and enforceability—may touch upon the same provision in an arbitration contract, they are categorically distinct inquiries that carry separate default rules about whether they presumptively belong before a court or an arbitrator.

Cirrencione's principal argument is that the arbitration agreement is invalid because the 60-day time limit to bring an arbitration demand frustrates the effective vindication of his federal rights. (*See* Resp. 9–10.) This is an enforceability issue, and therefore typically falls within this Court's prerogative to decide. *See Thomas v. Right Choice Staffing Grp., LLC*, 218 F. Supp. 3d 564, 567 (E.D. Mich. 2016) ("Whether the costs of the arbitral forum effectively prevent a plaintiff from vindicating his or her statutory rights . . . is a question for the court."); *see also Gavin v. Lady Jane's Haircuts for Men Holding Co., LLC*, No. 2:23-cv-12602, 2024 WL 2231667 at *4–5 (E.D. Mich. May 16, 2024), *aff'd on other grounds*, 135 F.4th 461 (6th Cir. 2025). The FAA, however, provides parties the leeway to contract around this default rule and instead refer "'gateway' questions of 'arbitrability'" to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 583

U.S. 63, 70 (2019) (quoting *Rent-A-Ctr.*, 561 U.S. at 68–69). Precedent establishes there must be "clear and unmistakable evidence that the parties agreed to have an arbitrator decide" threshold questions of enforceability. *Alliance Health and Life Ins. Co.*, 2022 WL 2903440, at *2. The Court must therefore determine whether the parties have effectively delegated the question of arbitrability to the arbitrator in the Residency Agreement.

They have. The arbitration clause specifies that the arbitration proceedings shall be conducted "in accordance with the rules of the American Arbitration Association then pertaining." (Residency Agreement 3.) These rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." R-7(a), *AAA 2026 Commercial Arbitration Rules*, https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation procedures.pdf [https://perma.cc/T9CU-LFJY]. The Sixth Circuit has repeatedly held that reference to these rules in an arbitration clause is clear and unmistakable evidence that the parties have agreed to arbitrate questions of arbitrability. *See New Heights Farm I, LLC v. Great Am. Ins. Co.*, 119 F.4th 455, 461 (6th Cir. 2024); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020); *In re Auto. Parts Antitrust Litig.*, 951 F.3d 377, 382 (6th Cir. 2020); *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019). Therefore, it is the arbitrator, and not this Court, that must resolve the substantive question of whether the 60-day time limitation period prevents the effective vindication of Cirrencione's rights under the Rehabilitation Act.

**C. Unconscionability**

The Court reaches the same conclusion on Cirrencione's alternative defense to enforcement: unconscionability. Cirrencione argues that this Court should decline to enforce the whole Residency Agreement as an unconscionable adhesion contract under the Michigan Supreme

Court's recent decision in *Rayford*. In that case, the Michigan Supreme Court held that an "adhesive boilerplate employment agreement that shortens a limitations period must be examined for reasonableness." *Rayford*, 2025 WL 2177754, at *1. An arbitration agreement's enforceability may be challenged on state law grounds, including unconscionability, so long as those state law defenses are not applicable only to arbitration contracts. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Consequently, if (1) the Residency Agreement is a contract of adhesion that (2) shortens a statutory limitations period, then *Rayford* logically applies and the Residency Agreement must be examined for reasonableness.

But that inquiry shall not be conducted by this Court. As noted above, the parties explicitly delegated questions of enforceability to the arbitrator in the Residency Agreement. The Court is bound to enforce that contract, just as any other. *See Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("[A]" valid delegation provision removes judicial purview and transfers the question of arbitrability to an arbitrator."). And Cirrencione has not adequately challenged the validity of that delegation provision because he has not raised a distinct argument that referring questions of arbitrability to an arbitrator is invalid. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 884–86 (6th Cir. 2021) (holding a party must "show that '*the basis of their challenge* is directed specifically' to the 'delegation provision,'" *id.* at 885 (cleaned up) (quoting *Rent-A-Ctr.*, 561 U.S. at 71–72)). Cirrencione does argue that the "Agreement is . . . [u]nconscionable," and that it is "adhesive by every measure." (Resp. 11.) But attacking the Residency Agreement as a whole, as Cirrencione does here, is not sufficient to challenge the validity of a delegation provision under Sixth Circuit precedent. *Becker*, 39 F.4th at 351 (citing *Rent-A-Ctr.*, 561 U.S. at 71). Therefore, Cirrencione must bring his *Rayford* argument, along with all his other defenses to the enforceability of the Residency Agreement, within the arbitral forum.

## IV. CONCLUSION

In summary, the Court finds that WMed did not waive its arbitration rights under the Residency Agreement by its conduct prior to or during this lawsuit. The Court does not reach the merits of either Cirrencione's effective vindication or unconscionability arguments because the Residency Agreement clearly states that threshold questions of enforceability should be decided by the arbitrator. Accordingly, the Court will grant WMed's motion to compel arbitration and stay the proceedings.

An order will issue consistent with this Opinion.

Dated: October 20, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE